Filed 4/29/26  In re J.M. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re J.M. et al., Persons Coming Under the Juvenile Court Law. | B346351 |
| | (Los Angeles County Super. Ct. Nos. 22CCJP02079, 22CCJP02079F, 22CCJP02079G ) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and  Respondent.<br><br>    v.<br><br>L. C.,<br><br>    Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal for Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Jessicia S. Mitchell, Principal Deputy County Counsel, for Plaintiff and Respondent.

Mother L.C. appeals from a juvenile court order continuing jurisdiction over two of her children, Jo. and K., pursuant to Welfare and Institutions Code section 364.[1]  She argues that the court lacked substantial evidence to find that continued jurisdiction was necessary, as she had completed all of her court-ordered programs and was caring for the children without further incident.  She also contends the court violated her constitutional rights by asserting continued jurisdiction.  We find no error in the trial court's order and therefore affirm.

## BACKGROUND

Mother has five children. The two children at issue in this appeal are Jo., born in 2011 to mother and father C.M., and K., born in 2021 to mother and father K.W.  Mother and K.W. are also parents to T., born in 2023. Mother also has two now-adult children with father D.B.: J., born in 2004, and Ja., born in 2006.[2]

Mother and her children have an extensive history with child protective services in Los Angeles and Riverside Counties.  This includes substantiated allegations in 2005 of domestic violence between mother and a boyfriend in the presence of child J., substantiated allegations in 2013 of neglect when mother left three of her children alone in the care of eight-year-old J., and substantiated allegations in 2022 that mother was arrested after brandishing scissors at Ja.  In April 2015, the children were removed due to allegations that mother left them alone without supervision and failed to ensure their enrollment and attendance at school.  The children were returned to mother after she completed counseling and parenting education.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

[2]     None of the fathers of mother's children are parties to the appeal.  Ja., initially named in the petition at issue here, turned 18 during the pendency of proceedings.

The current case arose from three incidents between mother and K.W. in October 2023. On October 5, 2023, mother and K.W. were arguing in the street. K.W. was intoxicated and pushed mother while she was holding K. Mother was pregnant with T. at the time. K.W. was arrested; mother declined an emergency protective order. In a second incident on October 20, law enforcement responded after mother reportedly slapped K.W. during an argument. Mother denied any physical altercation. She was arrested for violating a prior protective order. Then, on October 22, mother reported to the police that she had been tracking K.W.'s cell phone, knew he was inside his home with K., but would not give her the child. The children were placed with maternal grandmother (MGM), who had also been caring for Jo. for several months.

The Los Angeles County Department of Children and Family Services (DCFS) filed a section 300 petition on October 27, 2023 on behalf of Ja. (17 years old), Jo. (12 years old), and K. (22 months old), alleging jurisdiction under section 300, subdivisions (a), (b)(1), and (j). Counts a-1 and b-1 alleged that the children were at risk of harm due to mother's history of domestic violence with K.W. Counts b-2 and j-1 alleged that mother's history of substance abuse placed the children at risk.

In her contacts with DCFS in October and November 2023, mother refused to answer questions or provide information such as contact information for K.W. or the location of her older children. She also refused to provide any information regarding her enrollment in programs and refused to sign paperwork from DCFS, stating that she did not trust the children's social workers (CSWs). DCFS also reported that mother often recorded conversations with DCFS staff without their consent.

Mother obtained a three-year restraining order against K.W. in November 2023. She also started counseling, domestic violence classes, and parenting classes. The criminal case against mother stemming from the October incidents was dismissed in December 2023.

In a December 2023 first amended petition, DCFS added count b-3 alleging substance abuse by K.W. At the December 13, 2023 adjudication hearing, mother testified that she did not strike K.W. during the October incidents. She acknowledged it was illegal to record the social workers

3

without permission but claimed that she would stop recording if they asked her to.

The juvenile court noted that there had been 22 referrals for this family in Los Angeles alone in the past 10 years, as well a 2015 petition in Riverside County. The court struck the allegation that K. was present during the altercation on October 20. The court sustained counts a-1 and b-1 as amended regarding the domestic violence. The court also sustained count b-3 regarding father's substance abuse, but dismissed counts b-2 and j-1 regarding mother's substance abuse. The court found that mother had a domestic violence history and an "anger management problem," she had been uncooperative with DCFS, law enforcement, and other authorities, and "she appears to be in denial about her behavior." Thus, it was necessary to remove the children from mother's care. The court ordered reunification services for mother, including individual and conjoint counseling, anger management, domestic violence and parenting programs, and monitored visitation. While the court was stating its findings, mother continued to interrupt in the courtroom. As a result, the court noted that mother would not stop talking and ended the proceedings.

Mother gave birth to T. in December 2023. DCFS received a separate referral regarding T. in February 2024, reporting that mother was "noncompliant and uncooperative" and had "outbursts" with DCFS staff members. Mother refused to allow DCFS to assess T. or to provide identifying information for the baby for several months following his birth. DCFS filed a dependency petition regarding T. in July 2024.[3]

In August 2024, DCFS reported that Ja., Jo., and K. were doing well in MGM's home. All three children were participating in therapy and Ja. and Jo. reported doing well in school. During this period of review, mother had not made herself available to meet with DCFS. Mother was participating in her programs, but because she had not maintained communication with DCFS, the department was not able to talk with all of her service providers.

During an unannounced visit by DCFS at mother's home on August 16, mother agreed to allow the CSW to conduct a home assessment, but said that

---

[3] This court affirmed jurisdiction and disposition orders over T. in a prior, unpublished opinion, *In re Boy C.* (Jan. 5, 2026, B340822).

she would not permit the CSW to look around the home during future visits. Mother also permitted the CSW to conduct a visual check of T. while mother changed his diaper, but that "I won't be allowing you to do this other times." The CSW explained it was DCFS policy to conduct a visual body check on children three years of age and younger and provided mother with a copy of the policy.

DCFS reported that several of the programs mother had completed were not approved by DCFS. DCFS noted mother's behaviors were defensive and evasive and she continued to lack insight into the issues that brought her family to the court. During two home visits in September 2024, mother would only allow CSWs to view parts of the home.

As of September 2024, mother was participating in approved programs and individual counseling with a licensed therapist. At a review hearing in October 2024, the juvenile court noted that mother had "failed the attitude test" in her behavior in court and with DCFS. However, the court found that mother had completed her programs and DCFS had assessed her home as safe, as T. had already been returned to mother's care. Accordingly, the court ordered Jo. returned to the care of mother and father C.M., and K. returned to mother's care. The court also found continued jurisdiction was necessary and ordered family maintenance and family preservation services for mother. After mother queried whether she was "still dealing with the court" after the hearing, the court explained that the children remained under the court's jurisdiction and that DCFS would be continuing monthly home visits and assessments of the children and that mother needed to cooperate with DCFS.

In early 2025, DCFS reported that mother "has been very difficult to engage." After a male CSW was assigned to the case, mother told DCFS that she did not want a male CSW "checking my boy's private parts." During a home visit on February 27, 2025, mother refused to allow the CSWs to speak with Jo. alone, did not want to discuss case plans or court orders, refused to sign consent forms to allow DCFS to obtain records for the children, and would not respond to questions about the status of the children's medical appointments. She also would not allow the CSWs to view all of the bedrooms. She stated that the children were fine, did not need to be assessed by anyone, and she was tired of dealing with DCFS. As a result, DCFS could

not thoroughly assess the children. DCFS did not know if Jo., who was now 14, was continuing to receive mental health services while living with mother, which Jo. had previously stated were beneficial to her. Jo. told DCFS that she was more comfortable living with C.M. and wanted to move in with him at the end of the semester.

In a March 25, 2025 risk assessment, DCFS concluded that mother's risk level was "high," citing her "evasive and avoidant behaviors." DCFS noted that there had been approximately 30 interactions between the family and DCFS since 2005, and that mother continued to "use the same maladaptive tools" without addressing the issues leading to juvenile court intervention. Mother also refused to enroll in family preservation services.

At the section 364 review hearing[4] on May 20, 2025, DCFS recommended continued family maintenance services for mother. Mother and counsel for the children requested that the court terminate jurisdiction, highlighting mother's compliance with her case plan and the absence of recent incidents of domestic violence. Mother's counsel argued that the reports unfairly categorized mother as uncooperative, but she had regained custody of all of her children and completed her programs. He also stated that mother had allowed the children to be examined by several social workers, but was not comfortable disrobing her child in the presence of a male social worker.

The court noted that although mother contended she was being penalized by CSWs who disliked mother's assertion of her rights, her lack of cooperation was reflected throughout the case, in statements from numerous social workers. The court concluded that continued supervision was necessary until DCFS was able to adequately assess the children. The court told mother that if she did not want a male social worker, "then she needs to say that as opposed to refusing to engage with the department. I gave her the benefit of a doubt because I sent these children home to her. But I expect her to follow the court's orders," including "making these children available each month to the department which is their job." Mother's counsel

---

[4]     As discussed below, section 364 governs review hearings for continued jurisdiction over a child who has been returned to the physical custody of a parent.

reiterated that mother was not comfortable with a male social worker, and the court responded that it would "make a note so it's really clear. She's willing to make these children available for a visual inspection as well as [*sic*] there's a female social worker."

Mother appealed from court's May 20, 2025 order.[5]

## DISCUSSION

Mother argues that there was insufficient evidence of a continued risk of harm to Jo. and K. at the time of the section 364 hearing. As such, she argued the court erred in declining to terminate jurisdiction. We conclude that substantial evidence supports the juvenile court's orders.

### A. *Governing Principles*

After a child is declared a dependent, the juvenile court must review the status of the child every six months. (*In re Armando L.* (2016) 1 Cal.App.5th 606, 614 (*Armando L.*), citing *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1154.) Section 364 provides the standard where, as here, a child was removed from the physical custody of a parent but later returned. (*Armando L., supra*, 1 Cal.App.5th at p. 614; see also *In re Shannon M.* (2013) 221 Cal.App.4th 282, 290.)

"'When proceeding under section 364, because the child is in placement with a parent, the court is not concerned with reunification, but with determining whether continued supervision is necessary in the family home.'" (*In re R.F.* (2021) 71 Cal.App.5th 459, 469, citing § 364, subd. (c).) The juvenile court makes this determination based on the totality of the evidence, including "any evidence presented by the social worker, the parent, the guardian, or the child." (§ 364, subd. (c); see also *Armando L., supra*, 1 Cal.App.5th at p. 615, citing *In re Aurora P., supra*, 241 Cal.App.4th at p. 1155.) The court "shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." (§ 364, subd. (c).)

---

[5] Mother filed a section 388 petition requesting a change of order on June 3, 2025, which the juvenile court summarily denied. The petition is not in the record and mother does not challenge its denial on appeal.

We review findings under section 364 for substantial evidence. (*In re D.B.* (2015) 239 Cal.App.4th 1073, 1086; *In re N.S.* (2002) 97 Cal.App.4th 167, 172.) Under this standard, "we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re I.J.* (2013) 56 Cal.4th 766, 773; see also *In re J.F.* (2014) 228 Cal.App.4th 202, 209.)

### B. *Analysis*

Mother argues that the juvenile court erred by finding a current risk of harm to Jo. and K. at the time of the section 364 hearing in May 2025. We conclude that substantial evidence supports the court's order for continued jurisdiction over Jo. and K.

A parent's failure "to participate regularly in any court ordered treatment program shall constitute prima facie evidence that the conditions which justified initial assumption of jurisdiction still exist and that continued supervision is necessary." (§ 364, subd. (c).) Although she had completed a number of her programs, mother refused to participate in court-ordered family preservation services and refused to comply with court orders to cooperate with DCFS. The court could consider mother's refusals as evidence supporting a need for continued jurisdiction. Further, mother had a long history of involvement with the department, including numerous incidents of domestic violence. Mother continued to insist she was never the aggressor and did not need services or interventions, but despite completing multiple programs, she failed to gain insight into her issues with anger management and safe parenting. Although mother contends that the children were safe and healthy after being returned to her care, she would not allow DCFS to properly examine or interview the children, view her home, or obtain the children's medical or educational records. She continually resisted efforts by DCFS to discuss her programs with her or to demonstrate what she had learned. Thus, DCFS could not fully assess the progress made by mother or the children. Under these circumstances, we conclude that substantial evidence supports the court's finding that the conditions justifying the initial

8

assumption of jurisdiction still existed, or would likely resume without supervision.

Mother's appellate briefs appear to repeatedly suggest that the *purpose* of the court's continued exercise of jurisdiction was "so that mother could be forced to disrobe her children under three years old and expose their private genitals in front of 15 and more routinely changing social workers."  This accusation is not well taken; it is unsupported by anything in the record and contrary to the court's express findings as to the bases for continued jurisdiction.

Mother also raises several constitutional arguments on appeal, contending that the court's continued jurisdiction violates her rights under the First, Fourth, and Fourteenth Amendments.  These arguments hinge on mother's claim that the juvenile court continued jurisdiction without substantial evidence.  As we have rejected that claim, mother's constitutional arguments are moot.

In addition, mother failed to raise any constitutional arguments below and has therefore forfeited them on appeal.  (See *In re A.A.* (2012) 203 Cal.App.4th 597, 606 ["Cloaking the issue in terms of constitutional error does not preserve the issue."]; *In re Sheena K.* (2007) 40 Cal.4th 875, 880–881 [constitutional right may be forfeited in civil cases by the failure to make timely assertion].)  Mother asserts that she adequately raised the issue by arguing below that the court was "forcing her to do . . .  what she was not comfortable doing."  We disagree.  Mother complained below that she did not want male social workers to perform the visual assessment of her children and the court agreed to accommodate that request.  Mother did not otherwise object, nor did she argue to the juvenile court, as she does on appeal, that DCFS's monthly visual assessment must be predicated on a sexual abuse allegation or that it violated her constitutional rights.  She also did not object below that the court was forcing her to participate in family preservation services in violation of her First Amendment rights.  She therefore failed to preserve these claims.  Moreover, mother's constitutional arguments are raised in perfunctory fashion and are not supported by relevant authority or reasoning.  We therefore decline to reach them.  (See, e.g., *People v. Hardy* (1992) 2 Cal.4th 86, 150 [appellate court may decline to address argument

9

not supported by citation to relevant authority]; *Clary v. City of Crescent City* (2017) 11 Cal.App.5th 274, 294; see also Cal. Rules of Court, rule 8.204(a)(1)(B); *In re J.M.* (2023) 89 Cal.App.5th 95, 114-115.)

## DISPOSITION

The juvenile court's May 20, 2025 order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:



ZUKIN, P. J.



MORI, J.